```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF MARYLAND

 3                        SOUTHERN DIVISION

 4  UNITED STATES OF AMERICA,        ) CRIMINAL
                                     ) NO. GJH-21-0101
 5           Plaintiff,              )
                                     )
 6  v.                               )
                                     )
 7  MADANI ILARA TEJAN,              )
                                     )
 8           Defendant.              )

 9          TRANSCRIPT OF JURY TRIAL PROCEEDINGS - DAY 8
                BEFORE THE HONORABLE GEORGE J. HAZEL,
10                  UNITED STATES DISTRICT JUDGE,
                            AND A JURY
11           FRIDAY, FEBRUARY 17, 2023; 10:18 A.M.
                        GREENBELT, MARYLAND
12  APPEARANCES:

13  FOR THE PLAINTIFF:

14           OFFICE OF THE UNITED STATES ATTORNEY
             BY:  CAITLIN R. COTTINGHAM, ESQUIRE
15           6406 Ivy Lane
             Suite 800
16           Greenbelt, Maryland  20770
             (301) 344-0862
17                   -and-
             UNITED STATES DEPARTMENT OF JUSTICE
18           BY:  GERALD A.A. COLLINS, ESQUIRE
             BY:  LISA K. MAN, ESQUIRE
19           1301 New York Avenue
             7th Floor NW
20           Washington, DC  20005
             (202) 262-6468

21

22

23  OFFICIAL COURT REPORTER:
    Renee A. Ewing, RPR, RMR, CRR - (301) 344-3227
24
         ***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***
25
```

```
1    APPEARANCES (Continued):

2    FOR THE DEFENDANT:

3              DAVIS AND DAVIS
               BY:  CHRISTOPHER M. DAVIS, ESQUIRE
4              BY:  MARY E. DAVIS, ESQUIRE
               1350 Connecticut Avenue NW
5              Suite 202
               Washington, DC  20036
6              (202) 234-7300
                      -and-
7              BY:  SEAN P. McCLIGGOTT, ESQUIRE
               602A North Tazewell Street
8              Arlington, Virginia  22203
               (989) 992-3537

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (Call to order of the Court.)

2          THE COURT:  You may be seated.

3      Good morning, everyone.

4          (Counsel reply, "Good morning, Your Honor.")

5          THE COURT:  A few things.  So, first on the exhibit

6  list issue, I know this is actually feedback that I have gotten

7  from prior jurors that I know I have passed on to individual

8  members of Ms. Cottingham's office, I don't know if I have ever

9  said it to the supervisors or anything, but -- but, again,

10 jurors have given us this feedback in the past.  When we have

11 cases like this when there is just so much evidence, they get

12 back there and they are like, Oh, I just want to see the

13 picture of the wallet, just to come up with an example, and

14 they don't even know where to start.  They just start, like,

15 flipping through stuff.

16     So I don't know if there is an exhibit list of only -- or

17 if something can be created of only admitted evidence with

18 non-argumentative descriptions.  Right?  So, like, I mean, it

19 wouldn't apply here, but you wouldn't have a picture of the

20 murder weapon or even picture of victim's wallet.  Right?  It

21 would have to be completely non-argumentative.  But if such a

22 list exists, I don't see why we wouldn't want the jury to have

23 that.

24     I did read the email exchange.  I understand Mr. Davis'

25 point, but I just think that could be terribly inefficient if

1  every time they want to find something, we all have to gather

2  together and help them find it.  So, I don't know.

3      I guess my question is first for the government:  Is

4  there something we could give them?

5          MR. COLLINS:  Your Honor, there isn't one that exists

6  in the fashion that the Court has described; however, we

7  discussed possibly, you know, either redacting the original one

8  or -- or generating something that fits what the Court has just

9  described, a list of admitted items, and that it doesn't have

10  any descriptors that would I guess be perceived as, you know,

11  prejudicial.

12          THE COURT:  You would obviously need to run it by

13  defense, and if both sides are okay with it, then it's fine.

14  If there is an issue, I will, of course, resolve it.

15      Mr. Davis looks like he has something he wants to say,

16  though.

17          MR. DAVIS:  In the past, we have asked them to

18  identify what they would like to see, and then we would just

19  pull the exhibits.  Do they have all the exhibits back there

20  with them?

21          THE COURT:  Yes.

22          MR. DAVIS:  I guess if they would just ask what they

23  wanted to see and we could identify from the list, that way, we

24  don't have to send back a list with 500 exhibits on it and

25  change all the descriptions.  I mean, it's a lot of --

1          THE COURT:  But the problem, as I just indicated, you

2    never know what's going on back there.  That's one thing I have

3    learned from this job, right, because I get to go back and talk

4    to them at the end, and every jury is different is what I have

5    learned.

6          If they are the type of jury that is going to be looking

7    through a lot of evidence and -- and I want to see this and now

8    someone else wants to see this and someone else wants to see

9    this, then we are just going to be sitting here all day, and

10   every five minutes, they are going to be sending us a note,

11   Hey, can you tell us where this is?  Can you tell us where that

12   is?  It's just inefficient.  We have sent back the evidence.

13   We should empower them to be able to find what they are looking

14   for.

15         You know, in cases where there is a gun or there is

16   drugs, we don't send that back.  I presume we didn't send the

17   drugs back.  Okay.  But anything else, yeah, we just -- we give

18   it to them because we don't want to interfere with their

19   deliberations.  I, frankly, don't want the lawyers to know

20   every time they are looking at a specific exhibit, nor do I

21   want to know that.  I know you would love to know that, but

22   it's just inefficient.

23         MS. COTTINGHAM:  Your Honor, I was going to say in a

24   case -- in the *Elbaz* case, we actually did -- I have had --

25         THE COURT:  What case?

1          MS. COTTINGHAM:  The *Elbaz* case.  I have had cases

2  here not before you, although you did take the verdict in that

3  case.

4          THE COURT:  Oh, okay.  I do remember that.

5          MS. COTTINGHAM:  We did send back an exhibit list

6  with an itemized descriptor, so there is some precedence for

7  doing it here.

8          THE COURT:  That's Judge Chuang.  Right?

9          MS. COTTINGHAM:  Yes, Your Honor.

10          THE COURT:  Yeah.  I think he and I have discussed

11  this, so that doesn't surprise me.  Yeah, if we can create

12  something like that, that would be helpful.

13          MR. DAVIS:  That's okay.  I would like to know what

14  they are looking at, and then that is, in part, the reason, but

15  it's also if they are not seeking to review a lot of things, I

16  was thinking simplicity, if they just identified what they

17  want, we would tell them what the exhibit number was.

18          THE COURT:  Understood, but I -- yeah.  I think I am

19  going to go with my approach.

20          MR. DAVIS:  Sure.

21          THE COURT:  And so I will tell them -- well,

22  depending on how we handle these other things, we will decide

23  whether or not I need to send a writing back or just -- or

24  bring them out.

25          So they did -- oh, one other thing.  It's always helpful

1   -- all these little things come out that I don't always feel

2   like I need to call everybody back for, but then when I do have

3   you all here, I want counsel to be aware and put on the record,

4   there is one juror who has to put eyedrops in her eyes, and so

5   as a result of that, I guess she needs to lie down for ten

6   minutes, lie down flat.  We have put a couch in the secured

7   hallway.  She will never be outside of the sight of a CSO.  And

8   so we just made that accommodation.  It's one juror who I think

9   needs it for ten minutes during the lunch break is my

10  understanding.  It's on the record.  I wanted counsel to be

11  aware.

12        Now to the note.  So I am going to take it in the -- I am

13  going to go in reverse order.  Approximately how long is on or

14  about?  My inclination would be to tell them to use their

15  common understanding of the words.  I don't know that I would

16  define it beyond that.  But I will hear if someone else has a

17  thought.

18        MS. DAVIS:  Your Honor, our position is that all of

19  the evidence regarding Counts Two, Three, and Four dealt

20  specifically with October 3rd, 2018, and it's pretty obvious,

21  from the way the indictment was drafted, that is the evidence

22  that was given to the grand jurors.  So I -- we agree with

23  Count One, that on or about is appropriate, but there is

24  absolutely nothing to suggest that on or about for the other

25  three counts is at all appropriate.

1          THE COURT:  Isn't the language in the indictment on

2     or about?

3          MS. DAVIS:  It is, but the evidence presented is a

4     specific date.

5          THE COURT:  Isn't there also a jury instruction that

6     says -- and you might just be preserving this for record so I

7     am not trying to give you a hard time -- but isn't there also a

8     jury instruction that says it doesn't have to be the specific

9     date?

10          MS. DAVIS:  There is -- there is, Your Honor, but in

11     looking over the case law, the only time I see that this has

12     been found to be appropriate is when there is a conspiracy

13     count where they can't specify exactly when it started and when

14     it ended, although I think it's pretty clear in this case when

15     they did.  But, again, I don't -- I think to allow them to

16     think that Two, Three, and Four could have been committed on a

17     date other than October 3rd basically is a constructive

18     amendment to the indictment as it's written.

19          THE COURT:  Well, it clearly would not be -- I mean,

20     you might make other arguments.  It would not be any kind of

21     amendment to the indictment because the indictment specifically

22     says on or about, so those are the exact words in the

23     indictment.  But I understand your point, though.  I do

24     understand your point.

25          MS. DAVIS:  And if I could just make one additional

1   point?

2          THE COURT:  Sure.

3          MS. DAVIS:  Now, there is an Instagram -- the

4   Instagram account specifies certain dates regarding the, you

5   know, the distribution of pills or marijuana, but they -- but

6   Count Two only specifies October 3rd for the -- as far as the

7   possession with intent to distribute drugs, and I think that if

8   Your Honor allows them to consider on or about, they could

9   think they can expand what -- what that means.

10         And I -- if Your Honor is inclined to leave in the on or

11  about, I would think there should be some instruction as to how

12  on or about -- how far back they can go because, otherwise, it

13  could be that Mr. Tejan would be actually convicted of

14  something that happened back in September.

15         THE COURT:  Well, what would your -- I mean,

16  candidly, I likely will not follow it, but to make the record,

17  what would your suggestion be for what I should -- how I should

18  define on or about?

19         MR. DAVIS:  The Court's indulgence.

20         THE COURT:  Of course.

21      (Counsel conferring.)

22         MR. DAVIS:  Your Honor, we are thinking of something

23  along the lines of taking into consideration what Your Honor

24  referenced:  You should use your common-sense interpretation,

25  but I would add, of what the evidence presented demonstrates.

1      MS. DAVIS:  And also the specific language in the

2  indictment of a specific date.

3      THE COURT:  I will hear from the government.

4      MR. COLLINS:  Your Honor, the Court has provided the

5  jury with an instruction, and that was the first thing that we

6  did is we went to the instruction just to look at it.  I think

7  they should be referred back to the instruction.  The

8  instruction provides them the guidance that they need.  I think

9  any further -- any further instruction is just tipping the

10  scales on either -- either side of -- of the case.  And so I

11  think the instruction is what they should be referred to.  The

12  instruction is very clear.  And then based on their

13  interpretation of the instruction, they should then go back and

14  review the evidence.

15      THE COURT:  As I was talking to counsel, I was also

16  flipping through and found instruction variance on dates.  It's

17  a short enough instruction that I probably will just reread it

18  to them, frankly, and not add much to that.

19      I might say, Beyond that, use your common understanding.

20      MR. DAVIS:  On the evidence as presented?

21      THE COURT:  Of the words "on or about."

22      MS. DAVIS:  Your Honor, we would request that -- that

23  they be instructed that they have to consider the evidence

24  presented and to look at -- and to look at the date specified

25  in the indictment for Counts Two, Three, and Four.

1          THE COURT:  I understand your position.  I will -- I

2    am just going to reread the instruction.  I won't add to it.  I

3    will just reread the instruction.  I understand your objection.

4          And to be -- I want to be clear, I understand the thought

5    process, so let me flesh it out a little more.  I understand

6    the thought process behind your objection, the notion that,

7    well, maybe they have determined that he didn't possess drugs

8    on October 3rd but did on some other day and the evidence is

9    clearly about October 3rd, like, I get it, but the law still is

10   what the law is, so -- so I understand -- I want to be clear

11   that I understand your argument.  I am just inclined to point

12   them back to the instruction I gave.  So I have heard you.  I

13   understand.

14         On question -- I thought that was the simple one.  On

15   question one, I was confused, but that's because I don't have

16   the -- I don't have what they are looking at in front of me.

17   At least this does give Mr. Davis one opportunity to see what

18   they are looking at.  It says, for the record, Given the

19   discrepancy in the evidence description present on page 1 of

20   Government Exhibit 174, why does item -- is that IVY24 have the

21   additional descriptor of 10 millimeter auto caliber?  I don't

22   know if counsel might enlighten me as to what the issue is

23   there.

24         MR. DAVIS:  Certainly, Your Honor.  Well, first of

25   all, my position on this is that what they have, Government's

1  Exhibit No. 174, is the evidence, and it is for them to

2  interpret what the evidence means.

3           THE COURT:  I am inclined to say something like that,

4  but I am also still curious as to what the issue is.

5           MR. DAVIS:  I am going to show you what they are

6  asking about if Your Honor gives me a moment to get in here.

7           MR. COLLINS:  I already have it up.  I can put it on

8  the monitor if you want.

9           THE COURT:  Whoever can do it quicker.

10           MR. COLLINS:  Maybe not.

11           MR. DAVIS:  I have it.  Your Honor, what they are

12  referring to is -- and I referenced this in closing -- they are

13  referring to this description right here, IVY24.  It has ten

14  millimeter auto caliber.

15           THE COURT:  I remember you mentioning that in

16  closing.

17           MR. DAVIS:  And up here are three cartridges that

18  were recovered, and it doesn't say that.  The three cartridges

19  were identified as having been fired from the same firearm, as

20  you can see here; however, IVY24 was not grouped in with them.

21  The ballistics expert was not able to opine that -- that that

22  bullet -- partial -- that one fired partial bullet, he was

23  unable to say that it was fired from the same firearm as the

24  others.  That's what they are asking.  And I don't think we can

25  really give them much more than that.  The evidence is the

1    evidence.

2         THE COURT:  Yeah.  So that's helpful for the Court to

3    understand.  So what I will say, subject to -- subject to any

4    other input from counsel, Both evidence presentation and

5    argument have been completed, and so we can provide no

6    additional information on that at this point.

7         Any suggested edit to that?

8         MR. DAVIS:  That's fine, Your Honor.

9         MR. COLLINS:  No, Your Honor.  The government -- I

10   mean, the government believes their recollection and

11   interpretation of the evidence is what controls at this point,

12   Your Honor.

13        THE COURT:  I mean, it's just a different way of

14   saying that, but I agree with that concept.

15        I can then finish with, Your recollection and

16   interpretation of the evidence controls at this point.

17        MR. COLLINS:  That's fine with the government.

18        MR. DAVIS:  That's fine, Your Honor.

19        THE COURT:  All right.  So, just so we are all clear,

20   understanding that there is objections to at least some of

21   these rulings, I will tell them that as for their request for

22   an exhibit list, that we are going to try to create an evidence

23   -- an exhibit list for them.  We are going to try to create a

24   list that they can -- that they can use, but I would recommend

25   that they continue to deliberate as best they can in the

1   meantime.

2          MR. COLLINS:  And Your Honor, the government is

3   trying to be efficient.  We are actually working on that list

4   right as the Court speaks and we will share with counsel as

5   soon as it's ready.

6          THE COURT:  All right.  I think they have already

7   ordered lunch, so my sense is they are in a mindset that they

8   are going to be here for a minute.  That's always my indication

9   of where they think they are.  So that's their first question.

10         And then I will turn to the note.  As to the first

11  question on the note:  Both evidence presentation and argument

12  have been completed, and so we can provide you no additional

13  information at this point.  Your recollection and

14  interpretation of the evidence is what controls.

15         And then as to two, I will just say the only instruction

16  I can give them on that is the instruction that I previously

17  gave, and then I will read what was at one point -- I am

18  looking at an old draft -- but a variance on dates, which is

19  two sentences long -- three sentences long.  That's what I read

20  to them before.

21         So subject to objections, that's what I intend to do.

22         Any other questions before I bring them out?

23         MR. COLLINS:  No, Your Honor.  Thank you.

24         MR. DAVIS:  No, Your Honor.  We are going to call

25  them back?

1          THE COURT:  I decided to bring them out.  Sometimes I

2   write a letter and sometimes I bring them out.  It's three

3   things, so I will bring them out.

4          MR. DAVIS:  Your Honor, they do have a computer back

5   there.  Correct?

6          THE COURT:  They should.  We can confirm that with

7   Ms. Derro, but we usually send back a -- it's our standard

8   practice to send back a clean laptop.

9          MS. COTTINGHAM:  And Your Honor, they don't have the

10  drugs or the cash back there.  They have got everything else.

11         THE COURT:  Good.

12      (The jury panel enter the courtroom at 10:37 a.m.)

13         THE COURT:  You may be seated.

14      Good morning, ladies and gentlemen.

15      (The jury panel reply, "Good morning.")

16         THE COURT:  Good to see you all.  Hopefully you are

17  having a productive morning.

18      As I said, sometimes I will send a note back to you;

19  sometimes I will just bring you out here.  I think there were

20  three things to address, and so it just seemed more efficient

21  to just bring you out here and go through them.

22      The first, there was a request, I think at the end of

23  yesterday, for an exhibit list.  I certainly can understand how

24  that could be helpful, and so we want to work on that.  There

25  is an official list that the Court has, but it has extraneous

1  information on it, which is why we don't send that to you, but

2  we are going to try to put together a list that you can use and

3  get that to you as soon as we can.  But I will say, in the

4  meantime, you should continue to try to deliberate as -- as

5  best you can.  Don't wait on it.  But we understand the request

6  and we will try to get it to you.

7          Then we received two notes this morning.  Just for the

8  record, the first is -- and I am just reading the note -- Given

9  the discrepancy in the evidence description present on page 1

10  of Government Exhibit 174, why does Item IVY24 have the

11  additional descriptor of 10 millimeter auto caliber?

12          The only thing I can say on that is that both evidence

13  presentation and argument of counsel have been completed, and

14  so we can provide no additional information or argument at this

15  point.  Your recollection and evidence of the -- of what's been

16  presented is what controls, and so that's all that I can say on

17  that.

18          And then the last one was:  Approximately how long is on

19  or about?  On that, I will refer you back -- and I will read it

20  to you now because it's short -- the instruction I gave

21  regarding variance on dates.  It's somewhere in that large

22  packet I sent back there.

23          But it reads as follows:  The indictment alleges that the

24  offenses occurred on certain dates or at certain times.  It

25  does not matter if the indictment charges that a specific act

1  occurred on or about a certain date or time and the evidence

2  shows that, in fact, it was on another date or time.  The law

3  only requires a substantial similarity between the dates

4  alleged in the indictment and the date established by testimony

5  or exhibits.

6       That's in the instructions and it's all I can really say

7  in response to that question.

8       So, again, feel free at any time to send me another note

9  if you have a question, and we will continue to be as

10  responsive as we can.

11       With that, you are dismissed to continue your

12  deliberations.  Thank you.

13       (The jury panel exit the courtroom at 10:41 a.m.)

14       THE COURT:  After all these years, I finally gave in

15  to the complaints about how cold it is in here, and I am

16  sweating, and I want that on the record.  See you later.

17       (Recess taken from 10:42 a.m. until 2:47 p.m.)

18       THE COURT:  You may all be seated.  Give me one

19  second.

20       I just wanted to clean up a couple other things first.

21  Do I have all of the notes that they have sent?

22       THE DEPUTY CLERK:  With the exception of the first

23  and the note about the laptop.

24       THE COURT:  All right.  So, again, I like to put on

25  the record everything we have received from the jury, even the

1  ones that I handled without telling you at the time, so just to

2  catch us all up.

3      So at 12:24 -- and I had emailed the parties about this

4  one -- they indicated that page 55 of the jury instructions

5  alleges that Count Three occurred on or about April 13th, 2018.

6  Our understanding was that the alleged robbery occurred on

7  October 3rd, 2018, which is also stated on the verdict form.

8  Is this an error with the jury instructions or the verdict

9  form?

10      And I responded:  You are correct that the wrong date is

11  on the jury instructions at page 55.  It is alleged that a

12  robbery occurred on or about October 3rd, 2018.  The verdict

13  form has the correct date.

14      And so I just sent that back to them earlier.

15      Then they also sent a note just indicating that they were

16  having a problem with the laptop, and we had someone take care

17  of that.  That was at two p.m.

18      The current one, which I did -- which I did instruct

19  Ms. Derro I needed to consult with counsel on, was received at

20  2:24 p.m.  Can a previous count, example, One, Two, or Three,

21  be found guilty but not also be included as a predicate charge

22  for Count Four and therefore left unchecked?

23      I don't know if you got a chance to read it before.  So

24  if you are like me, you are instinctively trying to figure out

25  how they got to this point, and I don't know whether or not

1    it's necessarily useful, but I think the answer is yes.

2              MR. DAVIS:  I think we are all in agreement on that.

3              MR. COLLINS:  We are all in agreement.

4              THE COURT:  So should I just say yes and leave it at

5    that?

6              MR. COLLINS:  Yes.

7              MR. DAVIS:  I think so.

8              THE COURT:  That's what both counsel would like me to

9    do?

10             MR. COLLINS:  Yes, Your Honor.  We'd like you to say

11   yes.

12             THE COURT:  Yeah.  Instinctively, I had a longer

13   explanation, but I will go with that.  So to make sure they

14   know, because, literally, if I am just going to put one word,

15   just make sure they know it's in response to this.  I should

16   just write it on this.

17             THE DEPUTY CLERK:  Yes.

18             THE COURT:  That's fine.

19        You all made that too easy.  All right.  We will send

20   that note back to them and keep you posted.

21             MR. DAVIS:  Thank you, Your Honor.

22             THE COURT:  Thank you.

23             MR. COLLINS:  Thank you, Your Honor.

24        (Recess taken from 2:51 p.m. until 4:22 p.m.)

25             THE COURT:  You may be seated.  The temperature has

1  dropped like ten degrees since I made that comment earlier.

2          THE DEPUTY CLERK:  I know.  I apologize.

3          THE COURT:  I didn't know if someone was responding

4  to that or not.

5      We received another note at 4:01 p.m.  Does aiding and

6  abetting apply to first degree murder?  On page 71 of jury

7  instructions, it states, The government must prove that the

8  defendant killed Anthony Freeland.

9      I believe the answer to Question No. 1 is yes.

10         MR. DAVIS:  Although I don't think there is -- that

11 there is evidence to support a theory of aiding and abetting

12 here.  I don't think the United States --

13         THE DEPUTY CLERK:  Mr. Davis, would you talk into the

14 microphone?

15         MR. DAVIS:  Although I don't think the United States

16 presented evidence that would support a theory of aiding and

17 abetting.  I know that they always throw aiding and abetting

18 in, but I think the theory here is Mr. Tejan shot him.

19     I think where the confusion is coming from -- this was

20 what I was talking about with the dead horse I was beating --

21 these folks are hopelessly confused about first degree murder,

22 second degree murder.  They are viewing this like a murder

23 case.  This is a felony murder case.  It's first degree as a

24 felony murder.  There is no -- I mean, either Mr. Tejan used a

25 firearm in furtherance and in relation to a controlled

1   substance offense or a crime of violence resulting in death.

2   That's the issue.  They are all over the place now.  I mean, I

3   just don't know what they are doing.

4           THE COURT:  Is the answer to No. 1 yes?

5           MR. DAVIS:  Well, I am going to say no.  My partner

6   disagrees with me, and I am going to say no because the United

7   States didn't present a theory --

8           THE COURT:  That's a different question.  Does aiding

9   and abetting apply?  I feel like I have you on the stand now.

10          MR. DAVIS:  And for first degree murder, yes, in the

11  abstract, it does.  But in this case, I would submit that it

12  doesn't because there is no -- there is no factual theory

13  presented to this jury.

14          THE COURT:  I also disagree on that, but that's not

15  the question here.  But I will still respond, nonetheless,

16  because I can't help myself.  The facts show that there were

17  two people in the car.  They could have found that the other

18  person got -- I mean, it's pretty straightforward -- that the

19  other person got out and shot him, and that could be aiding and

20  abetting.

21          MR. DAVIS:  But that wasn't the theory presented.

22  The theory presented was the facts -- the facts presented were

23  that Mr. Tejan got out of the car, walked over, and shot the

24  man.

25          THE COURT:  That's fine.  But the government can

1   present alternate theories.  That's not the question here,

2   though, so I don't want to get too bogged down on that.

3        So the answer to that is yes, and I can just write that

4   in here since that seems to be the approach that counsel likes.

5        Question two, though:  Are you charged with both first

6   and second degree murder simultaneously?  On the verdict form

7   below Count Four, it says, Check all that apply.

8        I will confess I smacked myself in the head when I saw

9   this because when I saw the draft of the verdict form, I

10  started to take out "check all that apply" there because we

11  might recognize what it means to have lesser included --

12            MR. DAVIS:  Some of us.

13            THE COURT:  Some of us.

14       -- but it might be a confusing theory, and so we could

15  have just said check the one that applies, but we didn't.  So I

16  am open to what counsel think we should do with No. 2.

17            MR. COLLINS:  Well, Your Honor, just in general, I

18  think it's the government's position that, yes, you can be

19  simultaneously because second degree murder is a lesser

20  included one.  I understand the Court's position that --

21            THE COURT:  It's not a position.  I hear you.

22            MR. COLLINS:  In terms of how to address the -- I

23  guess your other point is how to address the verdict form.  I

24  mean, it's already been presented to them in that way.  I think

25  we are kind of stuck with the verdict form that we have and

1    it's --

2            THE COURT:  So would your position be that I should

3    just say verdict form -- that I should just say yes rather than

4    going into a lengthier explanation of what it means to be

5    lesser included?

6            MR. COLLINS:  The Court's indulgence on that one.

7            THE COURT:  Sure.

8            MR. DAVIS:  Your Honor, this is a two-part --

9            THE COURT:  Hold on.  Let me let them -- I don't want

10   to ask them to listen and talk to each other at the same time.

11           MR. COLLINS:  I'm sorry, Your Honor.  I am just

12   looking at the jury instructions real quick.

13       (Pause.)

14           MR. COLLINS:  So, Your Honor, our position is that it

15   should be yes and that it's a lesser included.  When you look

16   at the instructions, I mean, the instructions basically lay

17   that out, that first degree murder has an extra element that

18   second degree doesn't.  And so -- I mean, I think that's

19   already present in the jury instructions, and this additional

20   instruction from the Court will help clarify that.

21           THE COURT:  So am I saying just yes or something

22   beyond that in your -- what's your suggestion?

23           MR. COLLINS:  So yes, second degree murder is a

24   lesser included of first degree murder.

25           THE COURT:  Yes, comma, second degree murder is a

1    lesser included of first degree.

2        What does the defense say?

3        MS. DAVIS:  Well, Your Honor, what do we do if they

4    come back checking both first and second?

5        THE COURT:  Well, we would -- it would effectively --

6    it would mean that they determined that the elements of second

7    degree were satisfied and they also found premeditation, which

8    means that first degree was satisfied.

9        MS. DAVIS:  And then we go back to the same --

10       THE COURT:  I presume he would then be sentenced as a

11   first degree murderer.

12       MS. DAVIS:  And then we come back to the same issue

13   that we have been raising all along, which I guess now that

14   horse is a skeleton, but that -- that these are felony murder

15   counts and they -- and second degree murder doesn't apply at

16   all to felony murder.

17       THE COURT:  So I would say if they check both, I

18   would suggest that issue is mooted because they have decided

19   he's guilty of first degree murder.  But your issue is

20   preserved, so you get to -- you get to put the meat back on the

21   skeleton in Richmond on that issue if that's where we end up if

22   they check second degree murder.  But if they check first

23   degree murder, I would think it's a moot point, but it won't be

24   for me to decide that.

25       MS. DAVIS:  Okay.  Thank you.

1         MR. DAVIS:  Even though aiding and abetting -- just

2  so our record is clear, I am going to object to telling them

3  that they can find aiding and abetting for first degree murder

4  because I don't believe that's a theory that's viable on the

5  facts of this case, at least according to the theory that the

6  United States tried the case on and the manner in which they

7  indicted him.

8         And the second question, I think Ms. Davis covered it.  I

9  mean, we just -- if they find the predicates, it's first degree

10  murder, you don't have to deal with premeditation.  It's just

11  first degree murder if they find the predicates.  And I think

12  this just kind of -- it confuses it in a way and it makes it --

13  it makes it more likely they are going to convict.  It just --

14  it just has more appeal, I think, to lead to a conviction.

15  Beyond that, I haven't got much more to add.

16         THE COURT:  I don't know that -- well, I will just --

17  I won't -- I won't say it.  All right.

18        Are both sides comfortable with me responding in writing?

19         MR. COLLINS:  Yes, Your Honor.

20         MR. DAVIS:  I'm sorry, Your Honor.

21         THE COURT:  Are you comfortable with me responding in

22  writing?

23         MS. DAVIS:  Yes, Your Honor.

24         MR. DAVIS:  Yes.

25         THE COURT:  Just so it's on the record, I recognize

1   there is disagreement.  As to question one, I am just going to

2   write underneath question one "yes," and then put my name here.

3   Then under question two, I am writing, Yes.  Second degree

4   murder is considered a lesser included offense of first degree

5   murder.

6        I didn't know if that was on the same subject or not?

7            MR. COLLINS:  It's -- it's going back and forth

8   whether or not there is something else that needs to be added.

9   That's all, Your Honor.

10           THE COURT:  So we are comfortable with, Yes -- well,

11  this side objects, but, Yes.  Second degree murder is a lesser

12  included of first degree murder?

13           MR. COLLINS:  Yes, Your Honor.

14           THE COURT:  All right.  Thank you.

15           MR. COLLINS:  Thank you, Your Honor.

16       (Recess taken from 4:33 p.m. until 5:01 p.m.)

17           THE COURT:  You may be seated.

18       We received a note at 4:42:  We, the jury, have

19  unanimously reached a verdict.  So we will bring the jury in.

20       (The jury panel enter the courtroom at 5:03 p.m.)

21           THE COURT:  Everyone may be seated.

22       Good evening, ladies and gentlemen.  We were informed

23  that you have reached a unanimous verdict, so we will now go

24  through the process by which we receive the verdict.  I ask

25  that you pay close attention and follow the instructions of the

1  court clerk as she takes you through the process.  I believe

2  the first thing she will do is take attendance.

3          THE DEPUTY CLERK:  Thank you, Judge Hazel.

4      We are here to receive the verdict in Criminal Case No.

5  GJH-21-0101, the United States of America vs. Madani Ilara

6  Tejan.

7      Members of the jury panel, when I call your juror number,

8  would you please answer "present."

9      Juror No. 1.

10          A JUROR:  Present.

11          THE DEPUTY CLERK:  Juror No. 2.

12          A JUROR:  Present.

13          THE DEPUTY CLERK:  Juror No. 3.

14          A JUROR:  Present.

15          THE DEPUTY CLERK:  Juror No. 4.

16          A JUROR:  Present.

17          THE DEPUTY CLERK:  Juror No. 5.

18          A JUROR:  Present.

19          THE DEPUTY CLERK:  Juror No. 6.

20          A JUROR:  Present.

21          THE DEPUTY CLERK:  Juror No. 7.

22          A JUROR:  Present.

23          THE DEPUTY CLERK:  Juror No. 8.

24          A JUROR:  Present.

25          THE DEPUTY CLERK:  Juror No. 9.

1          A JUROR:  Present.

2          THE DEPUTY CLERK:  Juror No. 10.

3          A JUROR:  Present.

4          THE DEPUTY CLERK:  Juror No. 11.

5          A JUROR:  Present.

6          THE DEPUTY CLERK:  And Juror No. 12.

7          A JUROR:  Present.

8          THE DEPUTY CLERK:  Members of the jury, have you

9   agreed on your verdict?

10       (The jury panel reply, "Yes.")

11          THE DEPUTY CLERK:  Who shall speak for you?

12       Would the foreperson please rise?

13       Has the verdict sheet which was submitted to the jury

14   been answered?

15          JURY FOREPERSON:  Yes.

16          THE COURT:  Is the form signed and dated by you?

17          JURY FOREPERSON:  Yes.

18          THE DEPUTY CLERK:  When I step down, please hand the

19   verdict form to me so that I may present it to the judge.

20       (Document passed forward to the judge.)

21          THE DEPUTY CLERK:  As I read the questions, please

22   provide the answers.

23       Verdict form.  Count One:  Conspiracy to distribute and

24   possess with intent to distribute controlled substances.

25       How do you find the defendant, Madani Ilara Tejan, as to

1   the charge of conspiracy to distribute and possess with intent

2   to distribute controlled substances in Count One?  Guilty or

3   not guilty?

4           JURY FOREPERSON:  Guilty.

5           THE DEPUTY CLERK:  Having found the defendant guilty

6   of Count One, do you find that the defendant conspired to

7   distribute or to possess with intent to distribute the

8   following substances and quantities?

9       No. 1:  40 grams or more of a mixture and substance

10  containing a detectable amount of N-phenyl-N propanamide [sic],

11  commonly known as fentanyl.  Yes or no?

12          JURY FOREPERSON:  Yes.

13          THE DEPUTY CLERK:  No. 2:  Oxycodone, a Schedule II

14  controlled substance.  Yes or no?

15          JURY FOREPERSON:  No.

16          THE DEPUTY CLERK:  No. 3:  Marijuana, a Schedule I

17  controlled substance.  Yes or no?

18          JURY FOREPERSON:  Yes.

19          THE DEPUTY CLERK:  Count Two:  Possession with intent

20  to distribute a controlled substance.

21      How do you find the defendant, Madani Ilara Tejan, as to

22  the charge of possession with intent to distribute a controlled

23  substance on or about October 3rd, 2018 in Count Two?  Guilty

24  or not guilty?

25          JURY FOREPERSON:  Guilty.

1    THE DEPUTY CLERK:  Count Three:  Interference with

2  interstate commerce by robbery.

3    How do you find the defendant, Madani Ilara Tejan, as to

4  the charge of interference with interstate commerce by robbery

5  on or about October 3rd, 2018 in Count Three?  Guilty or not

6  guilty?

7    JURY FOREPERSON:  Guilty.

8    THE DEPUTY CLERK:  Count Four:  Murder resulting from

9  the use, carrying, brandishing, and discharging of a firearm

10  during and in relation to, and possession, brandishing, and

11  discharging of a firearm in furtherance of, a drug trafficking

12  crime and a crime of violence.

13    How do you find the defendant, Madani Ilara Tejan, as to

14  the charge of murder resulting from the use, carrying,

15  brandishing, and discharging of a firearm during and in

16  relation to, and possession, brandishing, and discharging of a

17  firearm in furtherance of, a drug trafficking crime and a crime

18  of violence on or about October 3rd, 2018 in Count Four?

19  Guilty or not guilty?

20    JURY FOREPERSON:  Guilty.

21    THE DEPUTY CLERK:  Having found the defendant guilty

22  of Count Four, which of the following predicate offenses (drug

23  trafficking crimes or crime of violence) do you find were

24  committed?

25    1:  Conspiracy to distribute and possess with intent to

1   distribute a controlled substance in Count One?

2             JURY FOREPERSON:  No.

3             THE DEPUTY CLERK:  Possession with intent to

4   distribute a controlled substance in Count Two?  Yes or no?

5             JURY FOREPERSON:  No.

6             THE DEPUTY CLERK:  Interference with interstate

7   commerce by robbery in Count Three?  Yes or no?

8             JURY FOREPERSON:  Yes.

9             THE DEPUTY CLERK:  Which of the following do you find

10  were committed during and in relation to, and in furtherance

11  of, the predicate offenses?

12        A firearm was used.  Yes or no?

13            JURY FOREPERSON:  Yes.

14            THE DEPUTY CLERK:  A firearm was carried.  Yes or no?

15            JURY FOREPERSON:  Yes.

16            THE DEPUTY CLERK:  A firearm was possessed.  Yes or

17  no?

18            JURY FOREPERSON:  Yes.

19            THE DEPUTY CLERK:  A firearm was brandished.  Yes or

20  no?

21            JURY FOREPERSON:  Yes.

22            THE DEPUTY CLERK:  A firearm was discharged.  Yes or

23  no?

24            JURY FOREPERSON:  Yes.

25            THE DEPUTY CLERK:  What type of murder do you find

1    the defendant committed?

2         First degree murder.  Yes or no?

3              JURY FOREPERSON:  Yes.

4              THE DEPUTY CLERK:  Felony murder.  Yes or no?

5              JURY FOREPERSON:  Yes.

6              THE DEPUTY CLERK:  Second degree murder.  Yes or no?

7              JURY FOREPERSON:  Yes.

8              THE COURT:  Do you wish to have the jury polled?

9              MR. DAVIS:  We do, Your Honor.

10             THE COURT:  Please poll the jury.

11             THE DEPUTY CLERK:  Juror No. 2, having delivered the

12   verdict of the jury, is that your verdict also?

13             JURY FOREPERSON:  It is.

14             THE DEPUTY CLERK:  Thank you.

15        Juror No. 1, having heard the verdict of your foreperson,

16   is that your verdict also?

17             A JUROR:  Yes, it is.

18             THE DEPUTY CLERK:  Juror No. 3, having heard the

19   verdict of your foreperson, is that your verdict also?

20             A JUROR:  Yes.

21             THE DEPUTY CLERK:  Juror No. 4, having heard the

22   verdict of your foreperson, is that your verdict also?

23             A JUROR:  Yes.

24             THE DEPUTY CLERK:  Juror No. 5, having heard the

25   verdict of your foreperson, is that your verdict also?

1          A JUROR:  Yes.

2          THE DEPUTY CLERK:  Juror No. 6, having heard the

3    verdict of your foreperson, is that your verdict also?

4          A JUROR:  Yes.

5          THE DEPUTY CLERK:  Juror No. 7, having heard the

6    verdict of your foreperson, is that your verdict also?

7          A JUROR:  Yes.

8          THE DEPUTY CLERK:  Juror No. 8, having heard the

9    verdict of your foreperson, is that your verdict also?

10          A JUROR:  Yes.

11          THE DEPUTY CLERK:  Juror No. 9, having heard the

12    verdict of your foreperson, is that your verdict also?

13          A JUROR:  Yes.

14          THE DEPUTY CLERK:  Juror No. 10, having heard the

15    verdict of your foreperson, is that your verdict also?

16          A JUROR:  Yes.

17          THE DEPUTY CLERK:  Juror No. 11, having heard the

18    verdict of your foreperson, is that your verdict also?

19          A JUROR:  Yes.

20          THE DEPUTY CLERK:  And Juror No. 12, having heard the

21    verdict of your foreperson, is that your verdict also?

22          A JUROR:  Yes.

23          THE DEPUTY CLERK:  Members of the jury, you have

24    heard the verdict and answers thereto as delivered by your

25    foreperson, and the verdict has been recorded, and do each of

1   you agree?  Please respond, "We do."

2        (The jury panel reply, "We do.")

3             THE DEPUTY CLERK:  Verdict recorded, Your Honor.

4             THE COURT:  Thank you.  Could I have counsel on

5   sidebar, please?

6        (The following took place at sidebar outside the presence

7   of the jury; all counsel present.)

8             THE COURT:  Can everyone hear me?  Can the defense

9   hear me?  Can the defense hear me?

10            MR. DAVIS:  We can.

11            THE COURT:  So the only thing I guess in hindsight

12  that maybe we could have worded differently, in terms of the

13  predicate offenses, it -- they obviously convicted on all three

14  predicate offenses, and then say, just as it's worded, they

15  found that the first two weren't committed, which would seem

16  inconsistent, but I think a pretty clear interpretation of it

17  is that they are finding that the murder was committed only in

18  furtherance of the robbery.  I think that's the obvious

19  interpretation.  Again, I am wishing maybe we had worded it

20  differently, but I just -- before we dismiss them, I wanted to

21  make sure we are comfortable with that.

22            MR. COLLINS:  The government is, Your Honor.  Thank

23  you.

24            MR. DAVIS:  I mean, am I comfortable with it?

25            THE COURT:  Well, I understand.  I guess, in

1   fairness, it's probably addressed to the party that has to

2   defend it on appeal, so you can say what you want.

3            MR. DAVIS:  Well, I just don't think -- this is

4   Monday morning quarterbacking.  I mean, there is not much to

5   say.

6            THE COURT:  All right.

7            MR. DAVIS:  I think what -- well, I mean, it doesn't

8   even matter what I think.

9            THE COURT:  Well, I wouldn't say that.  If you have

10  something you want to say, I will hear you.

11           MR. DAVIS:  No.  I have nothing to put on record.

12           THE COURT:  I didn't mean to indicate that it didn't

13  matter what you say.  That's not at all what I meant, so I do

14  want to be clear on that.

15           MR. DAVIS:  Thank you.

16           THE COURT:  Sure.

17       (End of sidebar discussion.)

18           THE COURT:  Ladies and gentlemen, thank you so much

19  for the time and attention you have given this case.  I really

20  appreciate it.  On behalf of the court as a whole, I want to

21  express our thanks.  Our system just doesn't work unless we

22  have individuals willing to give, in this case, two weeks of

23  their time that you could have been doing other things to come

24  in and resolve disputes sometimes between two individuals,

25  sometimes to resolve a dispute between the government and an

1    individual, so I just thank you for that.  The system would not

2    function without you being willing to do that.

3          I have one more thing that I am going to ask.  It's a

4    favor, though.  You don't have to do it.  But I would love the

5    opportunity to just come back there and talk to you for a

6    little bit, first, frankly, to just thank you in a more

7    personal fashion; second, often I find that jurors have

8    questions for me in terms of how we do things or things that

9    maybe didn't make sense to you.  Often, I also find that jurors

10   have feedback on how we can do things better, and we are always

11   eager to make this as good of a process for jurors as we can.

12         And so if you'd be willing to just hang out back there,

13   it will take me maybe five minutes to finish talking to the

14   lawyers.  If you don't want to do it, that means you have five

15   minutes to run away before I can get back there.  But if you

16   are willing to talk to me, I'd appreciate it.  I won't take up

17   too much of your time.

18         But you are formally dismissed from this process with the

19   sincere thanks of the Court.  Thank you so much.  You may

20   return to the jury room.

21         (The jury panel exit the courtroom at 5:17 p.m.)

22         THE COURT:  Counsel may be seated.

23     I am going to need Ms. Derro, though, because I need a

24   sentencing date.  I was not expecting her to go back with the

25   jury.  If need be, though, we will -- obviously, it will be a

1  different judge in any event, and so we could sign the

2  sentencing order later.

3       I do want to say again -- and I mean this, I said it

4  before the verdict, I will say it again -- a very well tried

5  case on both sides, which, particularly in a case of this

6  magnitude, is not something I take for granted.  It's something

7  that I appreciate, the professionalism and the way in which you

8  tried this case.  I thank you all for that.

9       You know, I guess with Ms. Derro not here, I don't want

10 to just hold you here, we can get a sentencing order to you at

11 some time in the future.  Obviously, it will be signed by a

12 different judge in any event, so maybe that makes the most

13 sense.

14          MR. DAVIS:  That's fine.

15          THE COURT:  So is there anything else that we need to

16 accomplish?

17          MR. DAVIS:  No.

18          THE COURT:  All right.  Thank you.  I wish you well.

19          MR. COLLINS:  Thank you, Your Honor.

20       (The proceedings were concluded at 5:18 p.m.)

21

22

23

24

25

1                    C E R T I F I C A T E

2

3              I, Renee A. Ewing, an Official Court Reporter

4    for the United States District Court for the District of

5    Maryland, do hereby certify that the foregoing is a true and

6    correct transcript of the stenographically reported proceedings

7    taken on the date and time previously stated in the above

8    matter; that the testimony of witnesses and statements of the

9    parties were correctly recorded in machine shorthand by me and

10   thereafter transcribed under my supervision with computer-aided

11   transcription to the best of my ability; and that I am neither

12   of counsel nor kin to any party in said action, nor interested

13   in the outcome thereof.

14

15                 Renee A  Ewing
                   _____
16
                   Renee A. Ewing, RPR, RMR, CRR
17                 Official Court Reporter
                   April 5, 2023
18

19

20

21

22

23

24

25