**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No.   8:21-cr-00101 |
| v. | ) | |
| | ) | Judge Deborah K. Chasanow |
| MADANI ILARA TEJAN | ) | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, through Erek L. Barron, United States Attorney for the District of Maryland, and David L. Jaffe, Chief of the Violent Crime and Racketeering Section, U.S. Department of Justice, files this memorandum to aid this Honorable Court in its sentencing determination regarding the Defendant Madani Ilara Tejan ("TEJAN" or "the Defendant"). On or about October 3, 2018, TEJAN shot and killed Anthony Freeland ("Freeland") with a firearm during and in relation to, and in furtherance of, a violent robbery. This heinous act occurred while TEJAN was engaged in a conspiracy to distribute fentanyl and marijuana, and in fact possessed controlled substances with the intent to distribute them. By these actions, TEJAN has forfeited his right to live as a free man. Respectfully, this Court should sentence TEJAN to the maximum Guidelines sentence on each of his counts of conviction, including life in prison for the murder of Freeland.

## PROCEDURAL HISTORY OF THE CASE

On April 14, 2021, a federal grand jury sitting in the District of Maryland returned an Indictment charging TEJAN with conspiracy to distribute and possess with intent to distribute a controlled substance, in violation of 21 U.S.C. § 846 (Count One); possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841 (Count Two); interference with interstate commerce by robbery, in violation of 18 U.S.C. § 1951 (Count Three); and using,

carrying, brandishing, and discharging a firearm during and in relation to, and possessing, brandishing, and discharging a firearm in furtherance of, a drug trafficking crime and a crime of violence, resulting in death, in violation of 18 U.S.C. §§ 924(c) and (j) (Count Four). (ECF No. 1).

On April 27, 2022, a Superseding Indictment was returned, which amended the prior charging document to allege fentanyl as an additional controlled substance in Counts One and Two, as well as the related drug weight for fentanyl in Count One. (ECF No. 30). More specifically, the Superseding Indictment charged TEJAN with conspiracy to distribute and possess with intent to distribute, in part, 40 grams or more of a mixture or substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 846 (Count One); and possession with intent to distribute a controlled substance, namely, oxycodone and fentanyl, in violation of 21 U.S.C. § 841 (Count Two).[1]

On April 5, 2022, a scheduling order was issued by the Court requiring the parties to file pre-trial motions by May 6, 2022, which were to be litigated at a hearing scheduled for July 8, 2022. (ECF No. 29). Per that order, the parties filed various pre-trial motions, including among other things, the Government's Motion to Admit Statements of Ferdinand Fotachwi Pursuant to Federal Rule of Evidence 804(b). (ECF No. 49). After considering the parties' significant briefing on this issue, as well as in-court litigation on July 8, 2022, the Court granted the Government's motion on August 8, 2022.[2] (ECF No. 66).

On February 6, 2023, TEJAN proceeded to trial in this matter. (*See* ECF Nos. 86, 88 – 93, and 98). On February 17, 2023, the jury returned guilty verdicts against TEJAN on all four counts

---

[1]     Counts Three and Four remained unchanged.

[2]     In its August 8, 2022, order, the Court specifically ruled that the "…statements will be admitted pursuant to the forfeiture by wrongdoing exception (but not the statement against penal interest exception)…" (ECF No. 66 at 1).

of the Superseding Indictment. (ECF No. 103). The jury specifically found, with respect to Count One, that TEJAN conspired to distribute or to possess with intent to distribute (1) 40 grams or more of a mixture and substance containing a detectable amount of Nphenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as fentanyl; and (2) a mixture and substance containing a detectable amount of marijuana. (ECF No. 103). With respect to Count Four, the jury specifically found that TEJAN committed a murder resulting from the use, carrying, brandishing, and discharging of a firearm during and in relation to, and the possession, brandishing, and discharging of a firearm in furtherance of, a crime of violence. (ECF No. 103).

On March 31, 2023, the United States Probation Office prepared a draft Presentence Investigation Report ("PSR") in anticipation of sentencing in this matter. On October 13, 2023, the Probation Office issued a second PSR. (ECF No. 137). In response, the parties submitted proposed corrections and objections. On December 4, 2023, the Probation Office issued a final PSR. (ECF No. 138). Sentencing is currently scheduled for **Wednesday, January 31, 2024**.

The maximum sentence provided for each of TEJAN's counts of conviction is as follows: Count One carries a statutory minimum term of not less than 5 years imprisonment and a statutory maximum term of not more than 40 years imprisonment; Counts Two and Three carry a statutory maximum term of 20 years imprisonment; and Count Four carries a statutory maximum term of life imprisonment or death[3].

---

[3]     In the final December 4, 2023, PSR, under the "Offense" section, it states that the penalty for Count Four is "[n]ot less than 10 years imprisonment and not more than life imprisonment…" (ECF No. 137 at 2).

However, the Supreme Court recently held in *Lora v. United States*, 599 U.S. 453 (2023), that the consecutive sentencing requirements in 18 U.S.C. § 924(c) do not apply to a sentence imposed under 18 U.S.C. § 924(j). Furthermore, the Court determined that "subsection (j) supplies its own comprehensive set of penalties that apply instead of subsection (c)'s," *Lora*, 599 U.S. at 460, and that Congress "eschew[ed] mandatory penalties" in subsection (j) "in favor of sentencing

## FACTUAL BACKGROUND

**A.** **Evidence Introduced at TEJAN's February 2023, Trial**

### 1. Murder of Anthony Freeland

On Wednesday, October 3, 2018, at approximately 8:51 p.m., Prince George's County Public Safety Communications received a call for a shooting in a neighborhood located in Lanham, Maryland. (ECF No. 117, 02/08/23, at 68-69 (Hull); ECF No. 120, 02/14/23, at 114 (Hamlin)). At approximately 9:36 p.m., an individual was found shot dead on Manton Way. (ECF No. 117, 02/08/23, at 38-39 (Blackmore)). The individual was later identified as "Anthony Freeland." (ECF No. 120, 02/14/23, at 114, 126 (Hamlin)). Freeland was located on the sidewalk near 6509 Manton Way – a section of the community that contained only two intersecting streets, Manton Way and Garrison Terrace. (ECF No. 117, 02/08/23, at 72-73, 80 (Hull); ECF No. 120, 02/14/23, at 115 (Hamlin)). The crime scene was secured for investigators to process the location. (ECF No. 117, 02/08/23, at 41-42 (Blackmore)). Responding officers discovered a .40 caliber S&W casing in front of 6905 Manton Way, and two $100 bills, one from under a car parked at 6506 Manton Way and one from the street in front of 6507 Manton Way. (ECF No. 117, 02/08/23, at 84-86 (Hull); ECF No. 117, 02/08/23, at 167-78 (Yuan)). Law enforcement also recovered a key fob in Freeland's back pocket and $90 in his front pocket. (ECF No. 117, 02/08/23, at 179-81 (Yuan); ECF No. 120, 02/14/23, at 120 (Hamlin)).

Following the initial call for a shooting, another 911 call was received reporting that a suspicious vehicle was parked on Bartley Way in Lanham, Maryland. (ECF No. 117, 02/08/23, at 107-08 (Boris)). At that scene, officers located a White Acura. (ECF No. 120, 02/14/23, at 119

---

flexibility," *id.* at 462. Therefore, the Government submits that a minimum term of 10 years is not applicable to Count Four.

(Hamlin)). The vehicle's engine was running and unoccupied. (ECF No. 117, 02/08/23, at 108 (Boris)). Additionally, the vehicle had what appeared to be blood splatter on the exterior and there was no related key in the vehicle. (ECF No. 120, 02/14/23, at 120 (Hamlin)). Subsequent investigation revealed that the Acura was owned by an associate of Freeland and operated by Freeland prior to his death. (ECF No. 111, 02/10/23, at 16-17 (Corbin); ECF No. 120, 02/14/23, at 120 (Hamlin)). The vehicle recovery location was still within the larger neighborhood (where Freeland was found), but approximately half a mile from the location of the murder scene. (ECF No. 120, 02/14/23, at 118 (Hamlin)). The Acura was towed to the Prince George's County Police Department's ("PGPD") evidence bay for processing. (ECF No. 117, 02/08/23, at 109, 111-12 (Boris)). A search of the vehicle revealed additional blood splatter on the interior, a bullet hole in the driver's side door, a bullet fragment on the driver's seat, as well as two shell casings on the passenger side floorboard closest to the door. (ECF No. 117, 02/08/23, at 191-97 (Yuan)). The Acura's GPS navigation system revealed that the last address entered and plotted to was 6503 Manton Way, Lanham, Maryland (the "Manton Way residence"). (*Id.* at 196-97 (Yuan)). A forensic examination of the recovered ballistics evidence revealed that the shell casings on scene and in the Acura were fired from the same weapon; an instrument that met the definition of a firearm under federal law. (Government's Trial Exhibits 8 and 174).

On October 4, 2018, the Office of the Chief Medical Examiner conducted Freeland's autopsy. (ECF No. 119, 02/10/23, at 11-12 (Allan)). Freeland had three gunshot-related wounds that were associated with multiple entry or exit points. (*Id.* at 14-15 (Allan)). The injuries were identified as being on the right side of his back, the middle of his neck, upper right chest, upper right abdomen, left upper clavicle, right lower chin, and right thumb. (*Id.* at 15-27 (Allan)). The

medical examiner determined the cause of death was gunshot wounds and the manner of death was homicide. (*Id.* at 29 (Allan)).

## 2.   Identification of TEJAN as a Suspect

Through investigation, law enforcement identified TEJAN as a suspect in Freeland's murder. (ECF No. 117, 02/08/23, at 96 (Malinowski); ECF No. 120, 02/14/23, at 188 (Hamlin)). On the night of the murder, law enforcement spoke with Freeland's girlfriend, Candace Corbin ("Corbin"). (ECF No. 118, 02/09/23, at 53 (Cruz); ECF No. 111, 02/10/23, at 4-5, 25-30 (Corbin)). Prior to his death, Freeland was living with Corbin in the District of Columbia for approximately a year. (ECF No. 111, 02/10/23, at 6, 44-45 (Corbin)). Corbin owned a 2017 white Acura and would sometimes let Freeland operate it; including after he dropped her off at work. (*Id.* at 15-17, 39 (Corbin)).

Freeland was a drug dealer primarily selling marijuana, as well as buying and reselling prescription pills. (*Id.* at 9-10, 13, 35 (Corbin)). Freeland would also get quantities of marijuana from associates in D.C. or California. (*Id.* at 40-41 (Corbin)). Besides TEJAN, Freeland would also sell drugs with another individual identified as "Nose." (*Id.* at 31, 35, 57) (Corbin)). Freeland reportedly made anywhere between $2,500 and $2,900 a week through drug trafficking. (*Id.* at 10-11, 45 (Corbin)). Freeland maintained a safe in the residence that normally contained his firearms, drugs, and drug-related money.[4] (*Id.* at 24-25, 41-45 (Corbin)).

The night before his murder, Freeland and Corbin were in the white Acura when Freeland was overheard speaking with "Mylik." (*Id.* at 21 (Corbin)). While this conversation took place over the phone, Freeland's device was connected to the audio system in the vehicle, and the audio

---

[4]     Following the murder, Corbin checked the safe inside the residence she shared with Freeland. While the firearms were still present, a substantial amount of money was missing from the safe. (ECF No. 111, 2/10/23, at 23-24 (Corbin)).

played through the vehicle's speakers. (*Id.* at 21-22 (Corbin)). Also, the contact information for "Mylik" appeared on the vehicle's dashboard monitor. (*Id.* at 23 (Corbin)). Corbin knew from the discussion that Freeland was buying "pills" from "Mylik" and that, in this particular call, the two scheduled a drug deal for pills to take place on the next day – October 3, 2018. (*Id.* at 21-22 (Corbin)).

Located at the murder scene was Freeland's cellular phone. (ECF No. 117, 02/08/23, at 86 (Hull); Government's Trial Exhibits 50 and 463). A review of the phone's contents revealed that two telephone numbers contacted Freeland prior to the murder – (202) 746-2459 ("2459 number") and (202) 878-3797 ("3797 number"). (ECF No. 120, 02/14/23, at 176-81 (Hamlin)). The 2459 number was the last number in contact with Freeland and was in the area of Manton Way – near the murder scene – at the time of the murder. (ECF No. 120, 02/14/23, at 69-72 (Fowler); ECF No. 120, 02/14/23, at 181 (Hamlin)). The 3797 number was listed in Freeland's iPhone as "Mylik" and was subscribed to TEJAN. (ECF No. 120, 02/14/23, at 177-78, 187-88 (Hamlin)). Detectives also found text messages on Freeland's cellphone. (ECF No. 120, 02/14/23, at 179 (Hamlin)). Common call analysis and tracing of the co-location of the phones associated with these numbers, as well as the text messages, indicated that TEJAN was the user of both phone numbers. (ECF No. 120, 02/14/23, at 14-79 (Fowler)).

Law enforcement also identified a social media account – an Instagram page with the profile name "stil_I_rise" – that was in regular contact with Freeland. (ECF No. 120, 02/14/23, at 192-94 (Hamlin)). The profile page of the account bore TEJAN's picture. (ECF No. 118, 02/09/23, at 83-84 (Cruz)). The account also had an Arabic symbol that when translated to the English language was the name "Malik." (ECF No. 118, 02/09/23, at 100-01 (Glanville); ECF No. 120, 02/14/23, at 193 (Hamlin)). The account was registered to the email address

madanitejan@gmail.com. (ECF No. 118, 02/09/23, at 84 (Cruz)). Furthermore, the account had numerous pictures throughout depicting its user as TEJAN. (ECF No. 120, 02/14/23, at 194 (Hamlin)).

### 3. Eyewitness to the Murder of Freeland

TEJAN was also identified as the primary suspect in the murder of Freeland through information provided by an individual identified herein as B.N. ("B.N."). (ECF No. 108, 02/09/23, at 27 (B.N.); ECF No. 121, 02/14/23, at 63-65 (Hamlin)). In 2018, B.N. was friends with an individual named Ferdinand Fotachwi ("Fotachwi") who he also called "Billa" or "Guwop." (ECF No. 107, 02/08/23, at 7-8 (B.N.)). During that same time, Fotachwi was friends with TEJAN, and B.N. met TEJAN through Fotachwi. (ECF No. 108, 02/09/23, at 8 (B.N.)). B.N. personally knew that TEJAN sold illegal drugs, including marijuana and pills. (*Id.* at 11-12 (B.N.)). Furthermore, Fotachwi would use his own vehicle to assist TEJAN with the completion of illegal drug deals. (*Id.* at 13 (B.N.)).

In October 2018, Fotachwi told B.N. that TEJAN killed someone during one of these drug deals. (*Id.* at 16 (B.N.)). On the date of Freeland's murder, TEJAN asked Fotachwi for a ride to a location to conduct a drug deal. (*Id.*). Once the two men arrived at the location, TEJAN left Fotachwi's car to complete the transaction. (*Id.* at 17 (B.N.)). However, while the transaction was occurring, Fotachwi heard gunshots and then observed TEJAN running to his (Fotachwi's) car. (*Id.* at 18 (B.N.)). TEJAN took an amount of marijuana from the victim during the armed robbery. (*Id.* at 19 (B.N.)). Fotachwi then drove both of them away from the crime scene. (*Id.*). That same night, Fotachwi told B.N. and another individual about the incident. (*Id.* at 19-20 (B.N.)). Upon hearing the story, B.N. had Fotachwi drive them to the scene of the murder. (*Id.* at 21 (B.N.)). After arriving, the three observed police in the area and left. (*Id.*). While driving, the three

contacted TEJAN via a video call to notify him that the police were present on scene. (*Id.* at 22 (B.N.)). A few days later, TEJAN admitted to B.N. that after he (TEJAN) shot Freeland, Freeland begged for his life as he was dying. (*Id.* at 24 (B.N.)).

### 4.  Arrest of TEJAN and Search of Residence

On October 20, 2018, TEJAN was arrested and transported to the PGPD Criminal Investigation Division. (ECF No. 120, 02/14/23, at 11 (Wheeler)). During an interview with detectives, TEJAN admitted that he associated with an individual named Keith Williams ("Williams") who lived at a known residence in Upper Marlboro, Maryland ("the Lottsford Road residence"). (ECF No. 118, 02/09/23, at 74-75 (Cruz)). Investigation also revealed that TEJAN used to live at the Manton Way residence – the last address entered into Freeland's Acura GPS navigation system on October 3, 2018 – in high school. (ECF No. 117, 02/08/23, at 96-100 (Malinowski); ECF No. 121, 02/15/23, at 51-52 (Hamlin)).

While in custody, a search warrant was executed at the Lottsford Road residence. (ECF No. 118, 02/09/23, at 76-77 (Cruz)). A search of this location resulted in the seizure of various items of evidence, including one wallet, suspected marijuana, and a cellular phone. (ECF No. 117, 02/08/23, at 141-48 (Fowler)). The recovered wallet was a two-toned Aldo brand wallet purchased and owned by Freeland prior to his murder. (ECF No. 111, 02/10/23, at 13-15 (Corbin)). The suspected marijuana was analyzed and determined to contain a mixture and substance containing 24.83 grams of marijuana, a Schedule I controlled substance. (Government's Trial Exhibits 9 and 217).

Furthermore, a cellular phone was located inside a green army-style fanny pack/backpack. (ECF No. 118, 02/09/23, at 80-81 (Cruz)). A review of cellular phone records revealed that the device was in fact a pre-paid Cricket Wireless phone utilizing the 2459 number – one of the

numbers that had been in touch with Freeland several times on October 3, 2018. (ECF No. 120, 02/14/23, at 182-87 (Hamlin); ECF No. 121, 02/15/23, at 76-81 (Hamlin)). Images obtained from the "stil_I_rise" Instagram social media account registered to TEJAN depicted him in possession of both the recovered green army-style fanny pack/backpack and the Cricket Wireless cellular phone. (ECF No. 121, 02/15/23, at 82, 85 (Hamlin)). Date and time stamps also established that these images were taken the night before Freeland's murder on Williams' phone and were posted to Instagram on October 3, 2018. (*Id.* at 85-87 (Hamlin)).

Williams acknowledged that he (Williams) was an associate of TEJAN's in 2018 and knew him (TEJAN) as "Dani" and/or "Malik." (ECF No. 118, 02/09/23, at 121-23 (Williams)). Initially, TEJAN and Williams would just hang out socially on a regular basis; however, the two eventually began staying together at the Lottsford Road residence. (ECF No. 118, 02/09/23, at 123-24 (Williams)). TEJAN maintained personal items in the Lottsford Road residence, including the green army-style fanny pack/backpack, the Aldo wallet, and the Cricket cellular phone (utilizing the 2459 number). (*Id.* at 125, 136, 141 (Williams)). While staying with Williams, TEJAN would also store small garbage-sized bags of "low quality" marijuana in the kitchen of the apartment, which he (TEJAN) sold to customers. (*Id.* at 137-39 (Williams)).

### 5. Further Evidence of TEJAN's Drug Trafficking

Review of TEJAN's Instagram messages revealed that as early as August 2018, he (TEJAN) was operating as a drug dealer—distributing controlled substances to associates. (ECF No. 120, 02/14/23, at 197-98 (Hamlin)). Additionally, information from Corbin revealed that Freeland was a sub-distributor of controlled substances received from TEJAN. (ECF No. 111, 02/10/23, at 21-22, 35 (Corbin)).

Furthermore, investigation revealed that TEJAN had been staying at a residential facility in Washington D.C. during 2018. (ECF No. 119, 02/10/23, at 46 (Tyson)). However, on August 15, 2018, TEJAN was found in possession of a bag containing approximately 1,013 30 mg pills. (ECF No. 119, 02/10/23, at 47, 54 (Tyson); ECF No. 119, 02/10/23, at 62-65 (Sheffey)). Officers from the Metropolitan Police Department ("MPD") responded and, during a search of TEJAN's person, discovered approximately $5,971 in U.S. currency. (ECF No. 119, 02/10/23, at 78-81 (Olivo)). The pills were analyzed and determined to contain 40 grams or more of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance. (Government's Trial Exhibits 10 and 249). Based on the totality of this evidence, investigators determined that TEJAN possessed this fentanyl with the intent to distribute. (ECF No. 119, 02/10/23, at 87 (Olivo); ECF No. 119, 02/10/23, at 155 (Jaramillo)). Additionally, based on TEJAN's social media messaging, he knowingly marketed fentanyl as prescription pills – specifically oxycodone. (ECF No. 119, 02/10/23, at 154 (Jaramillo)). The street value of the 1,013 fentanyl pills seized from TEJAN was approximately $25,000, further supporting the conclusion that the quantity of narcotics possessed was for distribution. (*Id.* at 155-56 (Jaramillo)).

## 6. <u>Attempt to Tamper or Destroy Evidence, and Obstruct Justice</u>

Several months after his arrest and while awaiting trial on Freeland's murder, TEJAN participated in a recorded jail call conversation. (ECF No. 121, 02/15/23, at 103 (Hamlin); Government's Trial Exhibit 423). During that call, TEJAN advised an associate that, prior to arrest, he (TEJAN) had been warned by apartment staff that law enforcement was looking for him (TEJAN). (ECF No. 121, 02/15/23, at 120-22 (Hamlin); Government's Trial Exhibit 423). TEJAN further said that, based on this warning, he was able to "clean up" (get rid of evidence) at the

Lottsford Road residence. (ECF No. 121, 02/15/23, at 122-23 (Hamlin); Government's Trial Exhibit 423). TEJAN told the associate that but for this information he (TEJAN) would have been concerned about being incarcerated for a longer period of time. (Government's Trial Exhibit 423).

### B.   Evidence Introduced at TEJAN's July 8, 2022, Motions Hearing

As stated *supra*, the parties in this matter participated in a motions hearing on July 8, 2022, before the Honorable George Hazel, United States District Judge. During this proceeding, the Court considered testimony which is undoubtedly relevant to determining the appropriate sentence for TEJAN at his sentencing hearing in this case. Besides further establishing the scope and nature of TEJAN's criminal conduct, that evidence also corroborates testimony heard at TEJAN's trial, including the testimony of witnesses like Corbin and B.N.

### 1.   Murder of Ferdinand Fotachwi

On October 15, 2018, at approximately 7:27 p.m., MPD was notified about the sounds of gunshots at an address on Drake Place in Southeast, Washington D.C. (ECF No. 106, 07/08/22, at 128-29 (Littlejohn)). Officers responded and located a victim, later identified as Fotachwi, unconscious and unresponsive inside a vehicle suffering from multiple gunshot wounds. (*Id.* at 128-29, 146-48 (Littlejohn)). Fire and EMS personnel arrived and pronounced Fotachwi deceased. (*Id.* at 133, 149 (Littlejohn)). Witness statements revealed that there were at least two persons of interest at the scene. (*Id.* at 152-58 (Littlejohn)). Recovered ballistics evidence indicated there were possibly two shooters. (*Id.* at 179-80 (Littlejohn)). An autopsy later determined the manner of Fotachwi's death was homicide and the cause of death was gunshot wounds. (*Id.* at 149-52 (Littlejohn); Government's Motions Exhibit 27).

Investigators spoke with several witnesses about Fotachwi's murder. (ECF No. 106, 07/08/22, at 159-60 (Littlejohn)). During conversations, eyewitnesses advised that TEJAN was

with Fotachwi in the hours leading up to his death. (*Id.* at 160 (Littlejohn)). In particular, an associate of Fotachwi's, identified herein as J.E. ("J.E."), told investigators that around noon he (J.E) was directed by Fotachwi to stop by the Lottsford Road residence. (ECF No. 106, 07/08/22, at 25-26 (J.E.)). Upon arrival, Fotachwi and TEJAN were present. (*Id.* at 27 (J.E.)). J.E. said that the three hung out at that location and drank alcohol. (*Id.* at 28 (J.E.)). J.E. stated that he left around 5:00 or 5:30 p.m. (*Id.* at 38-39 (J.E.)). However, before J.E. left, another unknown individual came to the residence and delivered a large, bulky package to TEJAN that J.E. believed contained marijuana. (*Id.* at 35-38, 45-47 (J.E.)). Upon leaving, J.E. was told that Fotachwi and TEJAN were going to Washington, D.C. to do a "swerve" – a street term meaning to "conduct business." (*Id.* at 39-40 (J.E.)). Later that evening, J.E. was notified by B.N. that Fotachwi was killed. (*Id.* at 40-41 (J.E.)). B.N. stated that TEJAN denied seeing Fotachwi on that date. (*Id.* at 42 (J.E.)). In response, J.E. told B.N. that Fotachwi was with TEJAN earlier in the day. (*Id.*). B.N. told investigators that after he was notified about Fotachwi's murder, he called TEJAN that same night to find out what happened. (ECF No. 60, Exhibit B, 06/16/21, at 24 (B.N.)). During the conversation, TEJAN denied knowing what happened to Fotachwi. (*Id.*). However, B.N. stated that he had spoken to J.E. prior to the call and learned that TEJAN, Fotachwi, and J.E. were together earlier in the day. (*Id.*).

Additionally, investigators searched the cellular phone of Williams. (ECF No. 106, 07/08/22, at 165 (Littlejohn)). Observed in the phone was a screenshot image of an Uber pick-up confirmation for a location in Southeast, D.C. that was sent to the 3797 number (TEJAN's registered phone) on October 15, 2018, at 7:33 p.m.—mere minutes after Fotachwi's shooting was reported. (*Id.* at 165, 168, 171 (Littlejohn)). The Uber information contained the driver's route to the scheduled pick-up location which was one block from where Fotachwi was found dead.

(*Id.* at 167-68 (Littlejohn)). A review of cellular data records associated with the 3797 number showed that the phone was at the Southeast D.C. location where Fotachwi was killed at the time of the shooing and that it returned to the area of the Lottsford Road residence after the shooting. (Government's Motions Exhibit 31). Interviews with Williams confirmed that TEJAN was the person who traveled in the Uber from the Southeast D.C. location to the Lottsford Road residence. (ECF No. 60, Exhibit C, 07/16/21, at 42-45 (Williams); ECF No. 106, 07/08/22, at 178 (Littlejohn)).

Williams' phone also contained Google searches on the early morning of October 16, 2018, for information related to the murder of Fotachwi (which occurred approximately around 7:30 p.m. the day before) but prior to any information about the murder being released to the media. (ECF No. 60, Exhibit C, 07/16/21, at 46-47 (Williams)). Investigators learned that TEJAN regularly had access to Williams' cellular phone, including the times when these searches were conducted. (*Id.* at 47 (Williams)).

When further questioned by investigators, B.N. explained that Fotachwi had previously stated to TEJAN "I'm going to snitch on you…" in reference to Freeland's murder. (ECF No. 60, Exhibit B, 06/16/21, at 22 (B.N.)). B.N. also said that he believed that, if confronted by the police, Fotachwi would have confessed to what happened and that TEJAN was aware of this fact. (*Id.*). B.N., therefore, believed that TEJAN feared that Fotachwi would speak with law enforcement and made sure he (Fotachwi) was unavailable to ever do so. (*Id.* at 24-26 (B.N.)).

## SENTENCING GUIDELINES RANGE

The December 4, 2023, PSR calculates TEJAN's criminal history category as V. The Government concurs with this calculation.

TEJAN's base offense level for Count One: Conspiracy to distribute and possess with intent to distribute a controlled substance is 24, pursuant to U.S.S.G § 2D1.1(c)(8). A 4-level upward adjustment applies, pursuant to U.S.S.G. § 2D1.1(b)(13), because marketing Fentanyl as another controlled substance was an object of the offense. A 2-level upward adjustment also applies, pursuant to U.S.S.G § 2D1.1(b)(16)(D), because witness tampering and destruction of evidence were all objects of the offense. A 2-level upward adjustment also applies, pursuant to U.S.S.G. § 2D1.1(b)(12), because TEJAN also maintained a drug premises (*i.e.* the Lottsford Road residence). The total offense level for Count One is 32.[5]

TEJAN's base offense level for Count Two: Possession with the intent to distribute a controlled substance is 12, pursuant to U.S.S.G. § 2D1.1(c)(14), because the offense involved at least less than 4 G of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] Propanamide) and at least 5 KG but less than 10 KG of marijuana. An 8-level upward adjustment applies pursuant to U.S.S.G. §§ 2D1.1(b)(12), 2D1.1(b)(13), and 2D1.1(b)(16)(D), because maintaining a drug premises (the Lottsford Road residence), marketing Fentanyl as another controlled substance, and witness tampering and destruction of evidence were all objects of the offense. The total offense level is 20.

The offenses in Count One and Count Two group, pursuant to U.S.S.G. §3D1.2(d), and the adjusted total offense level for both counts is therefore 32.

---

[5]     The final December 4, 2023, PSR did not include a 2-level adjustment pursuant to U.S.S.G. § 2D1.1(b)(12) for maintaining a drug premises. As a result, the PSR states that the total offense level for Count One is 30. As described herein, the Government disagrees with the PSR's calculation for this offense and believes the appropriate offense level is 32.

Based upon a total offense level of 32 and a criminal history category of V, the sentencing Guidelines range for the grouped offenses of Counts One and Two is calculated at 188 months to 235 months imprisonment.

TEJAN's base offense level for Count Three: Interference with commerce by robbery is 20, pursuant to U.S.S.G § 2B3.1(a). However, pursuant to U.S.S.G § 2B3.1(c), a cross-reference to U.S.S.G § 2A1.1 applies because Freeland was killed under circumstances that would constitute first degree murder. The final total offense level is therefore 43.

Based upon a total offense level of 43 and a criminal history category of V, the sentencing Guidelines range for Count Three is calculated as life imprisonment. However, the offense of Interference with commerce by robbery carries a 20 year (240 months) statutory maximum sentence of imprisonment; therefore, the applicable Guidelines range for Count Three is 240 months imprisonment.

TEJAN's base offense level for Count Four: Using, carrying, brandishing, and discharging a firearm during and in relation to, and possessing, brandishing, and discharging a firearm in furtherance of, a crime of violence, resulting in death is 43, pursuant to Appendix A of the U.S.S.G. and U.S.S.G § 2A1.1 because Freeland was killed under circumstances that would constitute first degree murder. The final total offense level is therefore 43.

Accordingly, TEJAN's sentencing Guidelines range for this offense is life imprisonment.

## 18 U.S.C. § 3553(a) FACTORS

In determining the appropriate sentence, the Court must consider the factors outlined in 18 U.S.C. § 3553(a), including: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the

need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the Guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)

These factors all weigh against TEJAN here.

### A.   Nature and Circumstances of the Offense

Based on the evidence proven at trial, TEJAN was a serious drug trafficker engaged in a conspiracy from as early as August 2018, and continuing through October 2018, where he distributed controlled substances. While he sold some marijuana, TEJAN primarily fueled his illegal business with sales of the deadly drug fentanyl. Notwithstanding its lethal nature, as demonstrated by the spike in fentanyl-related deaths around the Maryland region in recent years, TEJAN was uncompromising in its sale and his efforts were significant – as evidenced by his marketing of it as prescription pills like oxycodone, using social media to facilitate sales, possessing large amounts (1,013 pills with a street value of approximately $25,000) while in a government-run facility and under federal supervision, and operating cross jurisdictionally with sales throughout the DMV area. But the seriousness of his criminality was truly demonstrated by the lengths he would take to maintain his business – through violent acts such as robbery and murder. And on October 3, 2018, while engaged in this drug conspiracy, TEJAN robbed and shot Freeland multiple times, killing him (Freeland).

The murder of Freeland was intentional, brutal, and violent. It was an execution. Equally alarming is the brazen manner in which this heinous crime took place. TEJAN planned and carried out this murder in the early evening of October 3, 2018, in a residential neighborhood. Freeland, a purported personal and business associate of TEJAN, was lured to the location of his death under the pretense that he was meeting his "friend" for a drug deal. But it is clear that TEJAN had already planned to rob Freeland and because they knew each other, he (TEJAN) could not leave him alive. To this point, only mere moments after Freeland got to the agreed-upon location, TEJAN exited his vehicle while armed, walked to an adjoining street, approached Freeland's vehicle, aimed his gun at Freeland's face, and began firing from the passenger side. The first gunshot hit Freeland at nearly point blank range with a bullet that grazed his chin and entered into his throat, before traveling around his collar bone and out of his left shoulder. Freeland was then shot again in the right side as he attempted to flee the vehicle and run up the street. However, the last shot was one to the back and caused catastrophic internal injuries. Based on ballistics and other evidence, the murder weapon fired that shot from a position in the middle of the street, leaving Freeland to collapse on a sidewalk in front of a residence where he ultimately died in a pool of blood. Surveillance video and witness testimony of events before the crime indicated that the neighborhood was fairly active that night with both foot and vehicle traffic on the street and some of the connecting streets. However, this was inconsequential to TEJAN who had absolutely no regard for the safety of others in that community or fear of being caught for his crimes.

TEJAN has now been convicted of some of the most serious offenses in the U.S. Code based on this conduct. His sentence in this case should be commensurate with the serious, dangerous, and violent actions for which he was responsible. As such, this factor must weigh heavily in the Court's sentencing determination.

**B.**    **History and Characteristics of the Defendant**

As reflected in the final PSR, TEJAN has a serious criminal history that largely consists of committing armed robberies. On December 15, 2010, TEJAN pled guilty to theft: less than $1,000 value, in violation of MD Annotated Code 7-104, and was sentenced to 180 days imprisonment with 126 days suspended, 54 days credit, and three years of probation. On May 24, 2013, TEJAN pled guilty to one count of theft of property or services of a value less than $1,000, in violation of MD Annotated Code 7-104, and was sentenced to 18 months of imprisonment with all but 280 days suspended, and three years of supervised probation. On May 24, 2013, TEJAN pled guilty to one count of 2nd degree assault, in violation of MD Annotated Code 2-303, as well as one count of theft of property or services of a value of less than $1,000, in violation of MD Annotated Code 7-104, and was sentenced to 10 years imprisonment with all but 200 days suspended (as to the assault offense) and 18 months imprisonment with all but 200 days suspended (as to the theft offense), to run concurrent, and four years of supervised probation. For these offenses to which TEJAN pled guilty, he was initially charged with robbery (December 2010) and robbery and burglary (May 2013), respectively, but resolved these cases with pleas to lesser offenses.

On August 14, 2014, TEJAN pled guilty in case number 14-cr-0375 before the Honorable Judge George Hazel in the United States District Court for the District of Maryland to one count of conspiracy to interfere with commerce by robbery, in violation of 18 U.S.C. § 1951. This plea was for TEJAN's conduct in a series of armed commercial robberies that took place throughout the Prince George's County, Maryland area. TEJAN was subsequently sentenced to 68 months of imprisonment and three years of supervised release.

In addition to these crimes discussed above, TEJAN has been previously charged in eight other incidents where the charges were dismissed or resolved in some other way besides a conviction. Those matters involved offenses including trespassing, illegal drug possession, assault, and armed robbery. Three of these matters occurred when he was a juvenile and the rest while he was an adult.[6]

Besides his record of criminal activity, TEJAN also has a history of routinely failing to comply with court-ordered supervision. While on probation for the cases to which he pled guilty on May 24, 2013, TEJAN committed the robbery which led to his conviction in case number 14-cr-0375. In addition, it was while completing his sentence for case number 14-cr-0375 that, in August 2018, TEJAN was found in possession of the approximately 1,013 30 mg oxycodone pills at a D.C. Department of Corrections facility that were the subject of the drug conspiracy count in the instant case. TEJAN was subsequently charged with the illegal possession of drugs under District of Columbia Superior Court case number 2018-CF2-012086 and following his initial appearance, he was released. Thereafter, he failed to return to the halfway house and to appear for his next court date on September 5, 2018. He was then placed in absconding status and a warrant was issued for his arrest. Most notably, it was while TEJAN was on absconding status for this warrant and in violation of his court-ordered supervision in case number 14-cr-0375 that he committed the murder of Freeland.

While incarcerated with the Prince George's Department of Corrections awaiting the disposition of the instant matter, TEJAN developed a significant institutional history demonstrating his failure to follow the authority of the Department of Corrections, its staff, and

---

[6]     In May 2010, TEJAN had another matter, a juvenile adjudication for a burglary offense, where the disposition is unknown.

its rules. A review of his Department of Corrections records demonstrates that between the period of April 2019 and November 2021, TEJAN accrued infractions for approximately twelve (12) misconduct violations. His recorded infractions are summarized as follows:

- April 28, 2019 (ID#19-0428-504): TEJAN and five other inmates allegedly assaulted another inmate. He was charged with two counts of disorderly conduct and assault. There is no reported hearing disposition for this incident.
- August 10, 2019 (ID#19-0810-731): TEJAN allegedly was found in possession of contraband. He was charged with possession of drugs or intoxicants, violation of housing unit rules, and possession of contraband. There is no reported hearing disposition for this incident.
- March 14, 2020 (ID#20-0314-206): TEJAN allegedly was observed by a female officer masturbating. He was charged with other sex acts and interfering with staff. There is no reported hearing disposition for this incident.
- April 19, 2020 (ID#20-0419-523): TEJAN was observed by a female officer masturbating. He was charged with other sex acts and interfering with staff. It is reported that after a hearing on April 21, 2020, TEJAN was found guilty of these violations and sanctioned to 7 days for these offenses.
- May 7, 2020 (ID#20-0507-663): TEJAN allegedly called out to a female officer who then observed him masturbating. He was charged with other sex acts. There is no reported hearing disposition for this incident.
- On July 13, 2020 (ID# 20-0713-293): TEJAN received mail that contained the controlled substance suboxone. He was charged with attempting to possess drugs and attempting to possess contraband. It is reported that after a hearing on July 16, 2020, TEJAN was found guilty of these violations and sanctioned to 20 days and 15 days, respectively, for each offense.
- January 14, 2021 (ID#21-0114-374): TEJAN was found in possession of a homemade knife and admitted to possessing it. He was charged with possession of a weapon and possession of contraband. It is reported that after a hearing on January 19, 2021, TEJAN was found guilty of these violations and sanctioned to 25 days and 10 days, respectively, for these offenses.
- May 4, 2021 (ID#21-0504-452): TEJAN led other inmates in a disturbance in the inmate dining area. He was charged with attempting to incite others, riot, and interfering with staff. It is reported that after a hearing on May 24, 2021, he was found not guilty of attempting to incite others, but guilty of the remaining violations. He was sanctioned to 20 days and 15 days, respectively, for these offenses.
- July 16, 2021 (ID#21-0716-139): TEJAN and three other inmates allegedly took commissary items belonging to other inmates. He was charged with theft, a violation of housing unit rules, and extortion. There is no reported hearing disposition for this incident.

21

- July 25, 2021 (ID#21-0725-221): TEJAN allegedly assaulted another inmate. He was charged with threat to another and fighting. There is no reported hearing disposition for this incident.

- August 19, 2021 (ID# 21-0819-447): TEJAN and two other inmates allegedly robbed another inmate at knife point of commissary items. He was charged with theft and extortion. There is no reported hearing disposition for this incident.

- November 18, 2021 (ID# 21-1119-566): TEJAN allegedly was found in possession of contraband in his cell which consisted of excess commissary items. After investigation, the Department of Corrections did not charge him for any offense related to this incident.

Based on this information, TEJAN has a serious criminal history and extremely disturbing record of repeated violations of court-ordered supervision. Therefore, this factor must weigh heavily in the Court's sentencing determination as well.

### C.   The Need to Achieve Sentencing Goals (Accountability, Deterrence, Promoting Respect for the Law, and Rehabilitation)

A maximum Guidelines sentence on each of TEJAN's counts of conviction will achieve the essential goals of sentencing. In particular, a life sentence for Count Four reflects the magnitude of the conduct for which TEJAN was convicted and will provide a just punishment for his crimes. A sentence of that length will also serve as specific deterrence to TEJAN, who has previously received lenient sentences and continued to engage in acts of violence, including while on court-ordered supervision. A sentence of that length will also serve the ends of general deterrence because it will send a message to other violent offenders and drug traffickers that repeatedly engaging in conduct of this sort will lead to a substantial prison sentence. During his incarceration, the Bureau of Prisons will provide TEJAN with needed educational and vocational training. More importantly, however, a sentence of life imprisonment will ensure that the public is forever protected from TEJAN's dangerous criminal behavior.

### D.     The U.S. Sentencing Guidelines and Sentencing Policy Statements

The Guidelines sentence for Count Four in this case is life imprisonment. Imposing a sentence of life imprisonment would thus be precisely what TEJAN's Guidelines call for in this case and would be consistent with an evenhanded application of the Guidelines and of relevant Sentencing Policy Statements.

### E.     The Need to Avoid Unwarranted Sentencing Disparities

The sentence in this case should also avoid unwarranted sentencing disparities. Imposing a sentence of life imprisonment would avoid unwarranted disparities among defendants with similar records who have been sentenced for similar offenses under similar circumstances.

### F.     The Overriding Need for a Just Punishment

The sentence imposed should reflect the overall need to provide a just punishment for TEJAN in this case. To that end, the sentence ought to reflect the gravity of his criminal conduct, including his involvement in the violent murders of Freeland and Fotachwi, as well as his distribution of the dangerous drug fentanyl; TEJAN's criminal history, which includes violent, assaultive conduct, and demonstrates a high risk of recidivism; and the need to provide specific and general deterrence.

### G.     The Need to Provide Restitution to Victims

Lastly, the sentence imposed in this case should include an order of restitution, pursuant to the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. §§ 3663, 3663A, and 3664, for TEJAN to pay the total amount of $12,246.00. The imposition of restitution as part of a criminal sentence serves both compensatory and punitive purposes. *See United States v. Ritchie*, 858 F.3d 201, 214 (4th Cir. 2017). However, the underlying rationale for criminal restitution is to make the

crime victim whole. *See United States v. Grant*, 715 F.3d 552, 558 (4th Cir. 2013); *United States v. Steele*, 897 F.3d 606, 611 (4th Cir. 2018).

As the Government argued at trial, the death of Freeland has had a significant impact on his family. In addition to the emotional impact of his death, Freeland's family was forced to take on unexpected financial expenses that were directly attributable to the offense conduct underlying TEJAN's counts of conviction. The amount of restitution requested reflects the out of pocket losses incurred by Freeland's family for medical, burial, and other offense related expenses. Those expenses are identified as follows[7]:

- $3,950.00 – Cemetery and burial services;

- $4,850.00 – Post funeral reception;

- $2,946.00 – Mortuary services; and

- $500.00 – Vehicle insurance deductible.

Of this amount, $8,800.00 should be ordered paid to the Maryland Crime Victims' Resource Center, Incorporated, which represents certain members of Freeland's family, including his mother Ms. Annette Gladney. The remaining amount, approximately $3,446.00 should be ordered paid to Corbin, Freeland's fiancé at the time of death and mother of his child. Pursuant to 18 U.S.C. § 3572(d), the Government requests that these restitution amounts be ordered to be paid immediately – including during any period of TEJAN's incarceration – to ensure that these crime victims are made financially whole as soon as possible.

---

[7]     These expenses have been referenced in the victim impact statements and related supplemental attachments submitted to this Court. Copies of the invoices for the Cemetery and burial expenses, mortuary services, and vehicle insurance deductible are attached hereto as Government's Exhibit A.

## VICTIM IMPACT STATEMENTS

Several individuals have been impacted by TEJAN's conduct in this case. In advance of sentencing, some of these individuals have provided written impact statements for the Court's consideration. In addition to these written statements, the Government expects members of both Freeland's and Fotachwi's families to either speak or have statements presented at sentencing. Those individuals include Gladney, Seawell Freeland (Freeland's father), Rico Gladney (Freeland's brother), Corbin, Mathias Fotachwi (Fotachwi's father), Ernestine Fotachwi (Fotachwi's sister), Christian Fotachwi (Fotachwi's brother), and Ernest Fotachwi (Fotachwi's brother). It is anticipated that each person will speak for no more than 10 to 15 minutes.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court impose a maximum Guidelines sentence for each of TEJAN's counts of conviction, including a sentence of life in prison for Count Four. Such a sentence is warranted in this case and would be appropriate under the factors set forth at 18 U.S.C. § 3553(a).

Respectfully submitted,

EREK L. BARRON
United States Attorney

By:     */s/ Kelly O. Hayes*
KELLY O. HAYES
Assistant United States Attorney
District of Maryland

DAVID L. JAFFE
Chief, Violent Crime and Racketeering Section
U.S. Department of Justice

By:     */s/ Gerald A.A. Collins*
GERALD A.A. COLLINS
Trial Attorney, Violent Crime and Racketeering
Section
U.S. Department of Justice

25

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all counsel of record, on December 15, 2023.

By:     _/s/ Gerald A.A. Collins_
         GERALD A.A. COLLINS
         Trial Attorney, Violent Crime and Racketeering Section
         U.S. Department of Justice