IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(GREENBELT)

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : Crim. No. 21-101-DKC |
| MADANI ILARA TEJAN | : |

### DEFENDANT'S SUPPLEMENT TO MEMORANDUM IN AID OF SENTENCING

Defendant Madani Tejan, through counsel, supplements his Memorandum in Aid of Sentencing as follows.

**A.    NONE OF THE FOTACHWI FAMILY MEMBERS NOR CORBIN QUALIFY AS CRIME VICTIMS UNDER 18 U.S.C. § 3771**

18 U.S.C. § 3771(d)(1) states in relevant part:

(d) Enforcement and limitations.—

(1) Rights.--The crime victim or the crime victim's lawful representative, and the attorney for the Government may assert the rights described in subsection (a). A person accused of the crime may not obtain any form of relief under this chapter.

1. The Fotachwi Family

The government paints a picture of Mr. Fotachwi as someone who went along for the ride with Tejan on October 3, 2018 and simply was in the wrong place at the wrong time. It therefore argues that his family members are considered victims entitled to the rights provided in § 3771. This is a complete about-face from the government's position at trial where it argued to the jury:

There are two individuals who were on the scene of Manton

> Way. One of those individuals ends up taking Ms. Corbin's car and driving it away, and the other person is the driver of the suspect black vehicle. Based on the evidence, the government believes that the driver of the black vehicle was Ferdinand Fotachwi and the driver of the white vehicle is the defendant.
>
> However, if there is any concern that you believe those people have flip-flopped, it doesn't matter because aiding and abetting applies. *The two individuals were working in coordination.* You can see how the vehicles are moving. They go to another place where the vehicles are dumped, and because of this assistance -- this aiding and assistance, *both of them could be liable for these crimes.*

Tr. 2/26/23 at p. 107 (emphasis added).

The government's position at trial would make Fotachwi guilty on Counts One, Two, Three, and Four leading to the foregone conclusion that his family is barred from issuing any statement at the time of sentencing as victims.

2. Candice Corbin

As Judge Hazel so wisely noted during trial, "I feel like we have already established [Corbin] was involved in criminal activity," including consulting on drug dealing. Tr. 2/20/23 Corbin Excerpt 2/10/23. And as noted in Tejan's Motion for a New Trial at 6-7.

> Corbin works for TSA as an HR Specialist. She was aware that Freeland, her boyfriend who resided with her, sold marijuana and made between $2500 to $ 2900 per week. Excerpt Corbin testimony 2/10/23 Day 4 at 4, 9-10 (ECF # 111). Corbin testified she knew Freeland's friends and people he associated with in the course of his drug dealing. Id. at 10.
>
> According to Corbin, on October 2nd, Freeland and Tejan were supposed to meet for a drug deal but Tejan said that he drove off before Freeland could get there because Tejan said that the police had pulled up. Anthony asked him to meet him again later that night, to

2

which Tejan replied, "No, I am gone, I am out -- I am gone out of Maryland." "That's what he said." *Id.* at 22.

     Freeland would use Corbin's car for drug deals, but sometimes "he would walk." Id. at 39. When Freeland did not pick up Corbin after work on October 3rd, she called a family member to pick her up. She went home and changed her clothes. Interestingly, Corbin, before going to where she tracked Freeland's phone because she was so concerned with his wellbeing, checked the safe (the combination to which she knew) and noticed that the firearms were in the safe but not as much cash as she expected. Id. at 23.

………………….

     On cross-examination Corbin testified she knew that Freeland would get roughly three pounds of marijuana in the mail from California. He would keep it in the safe along with cash and illegal firearms. Id. at 41-42. Over the government's objection, Corbin testified that "Tubby", now deceased, was Freeland's friend. On the day Freeland was killed, he left marijuana with Tubby because he did not want to drive into Maryland with marijuana. … Then, on October 4th, Tubby called Corbin to pick up the marijuana because, according to Corbin, Tubby "wanted to respect Anthony" although she failed to explain how picking up marijuana from Tubby respected Freeland. Id. at 49-50. Corbin picked up the marijuana from Tubby and distributed to someone but she could not recall who that person was. Id. at 50. She provided a similar story with reference to the illegal firearms [that she gave away]. Id. at 51.

     At the close of cross-examination Corbin was asked, "So it's likely that -- you think that someone possessing illegal firearms and dealing drugs would -- may keep their job with TSA?" She replied, "No."

There certainly is no question that Corbin was especially involved in Freeland's drug business on many, many levels.

The government argues that even if Corbin was a co-conspirator in the drug conspiracy, she could still provide a statement and receive restitution at sentencing because she was not involved in the robbery and murder of Freeland. Gov't.

3

Supplemental Brief at 16. Understandably, the government cites no legal authority for this position. By allowing her to make a statement even though she is foreclosed from doing so, would run counter to the purposes of the CVRA. *See United States v. Lazarenko*, 642 F.3d 1247, 1252 (9th Cir. 2010) ("Kiritchenko argues that we should adopt the rule that co-conspirator/victim is entitled to restitution whenever the harm arose from criminal conduct *in which he or she did not participate*. We disagree.") (emphasis in original); *United States v. Reifler*, 446 F.3d 65 (2d Cir. 2006) (Orders of restitution imposed on defendants for their participation in stock manipulation conspiracy had to be vacated because they awarded restitution to persons who were clearly beyond Mandatory Victims Restitution Act's (MVRA) definition of victims; orders included persons who were not conspiracy victims, either because their losses resulted from purchases they made after the conspiracy had ended or because they were coconspirators.). Corbin's role disqualifies her from any protections of the CVRA and MVRA.

3. Corbin's Child

Tejan is unable to take a solid position as whether the child is a crime victim since nothing has been provided to establish that Freeland is in fact the father. But, even if the Court rules that the child is a victim, Corbin is limited in the type of statement she can provide.

> 18 U.S.C. § 3771E(2)(B) provides:
>
> In the case of a crime victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardians of the crime victim or the representatives of the crime victim's estate, family members, or any other persons appointed as suitable by the

court, may assume the crime victim's rights under this chapter, but in no event shall the defendant be named as such guardian or representative.

Since Corbin is foreclosed from providing a statement relevant to herself since she does not qualify as a victim, any statement made to the Court on behalf of the child must be strictly limited to the child and cannot relate to Corbin herself in any way.

**B.   I8 U.S.C. § 3661 LIMITS THE STATEMENTS THAT CAN BE MADE**

Mr. Tejan requests that the government provide a proffer as to what the Fotachwi family could say that would be relevant to Tejan's background, character, and conduct since there is no indication whatsoever that any of them knew Tejan. While the government states both the Fotachwi family members and Corbin can explain, "the impact that the Defendant's conduct has had on their lives …" Government's Supplemental Brief at page 22, such statements would be victim statements under § 3771, and would not qualify as information concerning Tejan's background, character, and conduct. None of the cases cited by the government supports its position. In every case the persons permitted to speak knew the defendant. In *United States v. Meyers*, 402 Fed. Appx. 844 (4th Cir. 2010) the witness was the defendant's ex-wife. In *United States v. Spiwak*, 377 Fed. Appx. 319 (4th Cir. 2010) the witness was an individual that the defendant had sexually assaulted. In *United States v. Cornett*, 515 F.Supp.3d 367 (E.D.N.C. 2021) the witness was the defendant's former domestic partner. The government cites no cases where the proposed witness did not know the defendant.

5

As for Ms. Corbin, her knowledge of Tejan is limited to a phone call she overheard. In fact, at trial, Corbin was asked if she knew Mr. Tejan. She replied, "Did I know him? Not personally." Tr. 2/10/23 Excerpt Corbin p. 37. For the reasons stated above, Corbin can offer nothing to the Court regarding Tejan's background, character, and conduct. And as requested for the Fotachwi family, Tejan requests a proffer from the government as to what Corbin's statements would entail.

**C.  THE GOVERNMENT HAS FAILED TO ESTABLISH RELEVANT CONDUCT**

Mr. Tejan again asserts there is no reliable evidence that can lead to the conclusion that Tejan was involved in the murder of Fotachwi. While Tejan may have been in the area, there was credible evidence that he was not involved in the murder.

**D.  Guideline Calculation - Destruction of Evidence**

It is improper to apply a two level increase for destruction of evidence under U.S.S.G. § 2D1.1(16) if there is no aggravating role adjustment under § 3B1.1.

                            Respectfully submitted,

                            /s/_____
                            Mary E. Davis #03230

                            Davis & Davis
                            1350 Connecticut Avenue, NW Suite 202
                            Washington, DC 20036
                            (202) 234-7300

/s/_____

Christopher M. Davis #23441

Davis & Davis
1350 Connecticut Avenue, NW Suite 202
Washington, DC 20036
(202) 234-7300

CERTIFICATE OF SERVICE

I hereby certify that that this Motion was served upon all counsel of record on this 13th day of February 2024 via the Court's CM/ECF System.

/s/_____
Mary E. Davis

7